Good morning and may it please the Court, my name is Sam Saylor. I represent Mr. Hill and Mr. Edwards. If I could, I'd like to reserve three minutes for rebuttal today. That's done and thanks for being here, Mr. Saylor. We understand it was not an easy trip. Thank you. I'm glad I'm here. Mr. Edwards, Mr. Hill have never received briefing or consideration of their rehave claims by any court. They deserve to have a court in the first instance decide whether the government proved what the Supreme Court in 2019 decided was an essential element of their 922 convictions. Whether they knew that they belonged to the class of people barred from Let's jump in and just make sure we're right about what's not in dispute here. I take it that the government at this point agrees that you don't need a COA, a certificate of appealability. Am I correct? It says that certificate of appealability is required but that based on this court's ruling in Lesko. Okay, that's a better way to put it. It meets that criteria. Thank you. That's the more accurate way to put it. Sure. Thanks. That you're here and we can consider the merits of the argument. Correct, Your Honor. Yes. I believe we can skip over that first part for that first question. Thank you. Okay, so if that's the case and we're looking at this in the first instance, can you explain to us why is it in light of the Lesko and in light of what we've got to say after Greer? Not something I personally was in full agreement with, but hey, it's the law, right? They get to say what it is. Greer is what it is. Why doesn't that just end this? Well, I think, Your Honor, by mentioning Lesko and Greer, sort of mentioning two different things or two different aspects of this case. In Mr. Edwards' case, we have to, or this court has to decide that Mr. Edwards' first step back to resentencing resulted in a new judgment under Magwood. And in this, this court under Lesko found that a new sentence also opens a new Magwood judgment window in order to challenge the conviction. So that's sort of a threshold question for Mr. Edwards. That's separate and apart from Mr. Hill. Mr. Hill and Mr. Edwards share some common issues regarding procedural default, which Greer informs, but I think doesn't directly address. So I want to focus here. On Judge Jordan's Greer point, focusing on Mr. Hill, if you look at the periods of incarceration, and in particular, I'll just focus on two, the 1991 and 1994 incarceration, and then the 2006 to 2011 period. Why doesn't that end this, as Judge Jordan said? Well, Your Honor, I think Greer says very little, if anything, about cause and prejudice under 2055, nor did the Supreme Court wish to foreclose moving or the excuse to cause, I'm sorry, the excuse to procedural default. But the Castro says a lot about cause and prejudice, doesn't it? It does, Your Honor, but... And we have to read the Castro and Greer together. So maybe, maybe that's the better way I should have said it, is like, given the Castro, given Greer, why aren't you done? For Mr. Hill, because you've very rightly said, hey, keep those separate, Hill and Edwards. Yeah, I think it is important for the court, especially in this procedural default analysis and this cause and prejudice analysis, to keep those separate. I would just say, in terms of Dick Castro, it is distinguishable that, A, the facts are different. Dick Castro, when he was arrested, admitted he was aware he wasn't in the country legally. Here, there's no such information. How's that legally relevant, though? What we were asking was the cause question in Dick Castro. And we said, look, if you needed a better, like, we couldn't even imagine a stronger case for cause than Rahafe changing the law and upending decades of gun law. And Greer says, no, you don't get, you lose. Well, that's that. Why isn't it? Why? Why would we not be persuaded by our colleagues? Assume we thought it was Dick, though. Why? What's flawed in the reasoning of the Castro? Well, because the reasoning of Dick Castro, excuse me, so it took the language from Greer, which was deciding what the correct standard was on direct appeal when a claim was unpreserved under Rahafe. The Supreme Court decided that limited question. Dick Castro then applied that to this prong in the Rid of Quorum and Novus test, in which there's no sound reason for failing to seek relief earlier. That is not part of the traditional cause and prejudice analysis. And frankly, I mean, I think the Supreme Court in Greer didn't wish to foreclose all petitioners under Rahafe who were moving under F3 that would be seeking to excuse the procedural default because of, again, additional cause and prejudice analysis. What's the basis for us to conclude that there is a different futility analysis that would apply in the context of Quorum Novus versus 2255? Well, we are urging this court to find that under Reed, that there's sufficient cause under Reed. You know, I didn't want to pivot to this quickly, but if this court does find, for instance, that counsel at the time of the trial and then appellate counsel at the time of the original conviction should be able to find that there's sufficient cause under Reed, should have raised a Rahafe claim, then that would actually serve as cause as well, just under traditional Coleman versus Thompson in effective systems of appellate counsel. So I think whichever way we want to have it here, this court can find cause to excuse the default. But I still maintain that Dick Castro should be constrained to the facts that it explored there and the writ that it explored there rather than the traditional 2255. All right. Assume we got past cause. The argument's made that there's no prejudice, even if you had cause, because there's no indication at all that this gentleman did not, Mr. Hill. You're referring to Mr. Hill? Yeah. Okay. Did not know that he was a felon. He had a lengthy rap sheet and he spent five years in jail in Virginia, and there's no indication in the record at all to contradict the conclusion that Greer seems to say, hey, this should be obvious to people that you're a felon. So I have a few things to say to that. One is that the petition in this case is the letter to the court actually requesting counsel to represent for Rahafe. So there's no real briefing or anything else in the sort of first instance before the district court. So, you know, at the very least, I urge this court to remand under principles of like a Miller notice in which to give Mr. Hill the opportunity to actually assert why he didn't know that he was amongst a class of people. Can you proffer if we did give that opportunity, what would that evidence be? Your Honor, there's nothing in the record of this case that I can say right now, just to be totally candid with the court. But again, I... What could you proffer that he could possibly say? Maybe the answer is, I don't know, but what could he possibly say that would indicate in the face of the sort of language that Greer's got, yeah, I got a long rap sheet. Yeah, I spent a good, a solid five in prison in Virginia, but I had no idea I was a felon. Well, I think this court should take its prejudice inquiry from the case that I mentioned in my 28-J letter I submitted a few days ago, United States v. Worrell, the Ninth Circuit case. That does evaluate prejudice where a defendant pled, so that's similar to Mr. Hill. And that court found that the standard to be applied was a reasonable probability that he would have proceeded to trial had he been properly informed of the elements of the offense. So that's, I think, the standard that we should apply to Mr. Hill on this cause and prejudice analysis. And I think there is, just as the defendant in Worrell, there is some indicia here that Mr. Hill would not have pled. He would have fought this. I think, you know, he, like the defendant in Worrell, was just convicted of the one count, and so I think there was every incentive for him to do that. I mean, how much traction should Worrell have here based on DiCastro? I mean, we just kind of went 180 degrees the opposite way, didn't we? Well, again, I think Worrell is far more on point to this, these cases for Hill and Edwards than DiCastro is. I don't think the facts of DiCastro can be totally disregarded. I will just add that DiCastro could have sought a stay during his direct appeal, which I'm sure informed the court's analysis of that third prong, or the Rio de Corum novus, because the Supreme Court was going to decide rehafe during that period. So he really had the opportunity to assert it earlier. These two defendants never had that opportunity earlier. And so, again, I just want to stress for your honors that in a traditional 2255F3, where someone's moving under that subsection, which these two defendants are, that a traditional cause and prejudice analysis, which is not foreclosed by Greer, and certainly not foreclosed by DiCastro, and the Supreme Court did not mean to foreclose in Greer, those could be set apart. And this court should approach it in a way that you have to ask yourself whether the Supreme Court essentially decided to foreclose every single rehafe claim under F3. I don't think that's the case. I also just want to, and I know I'm out of time, but... I would like you, now that you're on our time, to move to Mr. Edwards for a moment. Okay. In United States v. Easter, it looks like we held the first step back amounts to a sentence modification when the sentence happens there. So how does a sentence modification satisfy LESCO? Well, I think the language from the Supreme Court's decision in Concepcion is clearest on this point. I'll just quote here. Excuse me. Quote, the court interprets a statute whose very purpose is to reopen final judgments. That's directly from Concepcion. I mean, I think we are looking at a proceeding here that is far more than what the government would characterize as, say, a 3582C administrative ministerial procedure. This is a sentencing court receiving new information, receiving 3553A factors, receiving non-rectorate... Is Easter... Your Honor, in Shields... I'm not avoiding the question, but I just want to emphasize the procedure that the Shields court says, which gives the opportunity to have parties file memoranda and consider all legal and factual developments that have been intervening. And I think that meets the criteria under Magwood. Okay. Tell me what you think. What's the effect of Easter here? What does it mean? Is it just relevant? Easter was... I'm having trouble with the dates, but I do believe Easter was decided before Concepcion. So I think Concepcion would control entirely here. It's not irrelevant, but... There have been First Step Act opinions since then that I think are more relevant, particularly given the Supreme Court's decision in Concepcion. Judge Krause's opinion in Shields, I think, is number one. That used the word resentencing, and I get that this is not a question about magic words, but it does characterize it as resentencing throughout. And we said... So what you're saying is, even though we said in Easter a First Step Act change is a modification to a sentence, it's not a resentencing. It's not a new sentence and a new judgment. That's a holding in Easter, right? Or am I overcharacterizing it? I would say you're overcharacterizing it, especially given the Supreme Court's words in Concepcion. On pages 25 to 27 of your brief, you cite a litany of cases where there is a... I'm just going to call it a new judgment that leads to the conclusion that it's a new judgment for Magwood purposes. But if you look at each one of those cases, whether it's specifically identified in the statute or it's expressly stated in the cases, in each one of those, the original judgment was declared legally invalid. So my question for you is, do you have any cases that you can point us to where the original judgment wasn't legally invalid and the modified judgment or the new judgment, the modified judgment is considered a new judgment under Magwood? Well, I think the Supreme Court in Magwood measures what is a second or successive judgment. It is, according to that court, a term of art. And this court's opinion in Lesko, a prisoner who receives relief as to his sentence is not barred from raising in a second-in-time habeas petition a challenge to an undisturbed conviction. Fundamentally, it wasn't our reasoning in Lesko that, as Judge Montgomery-Reeves points out, that there was actually a break. There was following on that the Supreme Court had told us that if you have some new authority for detention, that's what constitutes the new judgment. And that would seem to be different in the case of a modification or reduction where it's even discretionary. The original judgment may remain in place and even if there is a reduction, there's no intervening period where, for example, there needs to be a stay put in place to continue authorizing the detention. Well, I think, A, in Mr. Edwards' case and really in all first step back proceedings, there is an evaluation of whether there's a new statute that applies under the revised 841 mandatory minimums and maximums. So in that case, actually, there is a different statute that does apply when a new judgment is given, when a new sentence is given there. And that's what happens in Mr. Edwards' case. I'll just say that the Supreme Court's analysis in Magwood of Burton v. Stewart characterizes the judgment pursuant to which the petitioner is being detained as the central inquiry here. And so I think unquestionably that occurred here in Mr. Edwards' case after a first step back proceeding because there was a revised sentence as to both, a revised statute of conviction in terms of the mandatory minimums and maximums as to the drug count. The 922G count was also modified as well. There's nothing in the statute, there's nothing in 3582, which would say this isn't a judgment. I would say other courts as well treat... Will you remind me where in the record the 922G sentence was modified? At the first step back proceeding, Your Honor? Exactly. The appendix? Yeah. I do not have the record site in front of me, but it wasn't a lengthy discussion. I'm sorry to be candid with Your Honor, but the district judge did take notice of the fact that there had been a lot of changes around 922G and that's the reason why he reduced that count. He also reduced that count because he was reducing the drug count quite a bit as well. He wanted to make sure that Mr. Edwards was going to get out earlier than he did because before it was just sort of a mandatory life sentence without any real discussion. I'll just note for Your Honor and circle back to Your Honor's question, the Ninth Circuit has analyzed Magwood up and down and has found that adjustments pursuant to changes in state law in which, for instance, allows felonies to be graded as misdemeanors, those result in a new judgment. That doesn't mean it was a legally invalid judgment. It's the change in law. Similar to, I would argue, a change in law that Congress promulgated with the First Step Act, which they're changing the statutory penalty for these drug counts. So is it your position that any modification under 3582C and that would reopen the judgment in a way that would constitute then a new judgment for purposes of a second or successive petition analysis? No, because 3582C proceedings under Dillon are not similar to or the same as the First Step Act. How are they different? Well, the Supreme Court in Concepcion says they are clearly different. 3582C proceedings in Concepcion, the court says they expressly cabin the district court's discretion. In First Step Act proceedings, there is no cabbing. They do allow the First Step Act allows intervening changes in non-retroactive sentencing guidelines. Again, 3582C doesn't allow for any sort of consideration of good behavior, doesn't allow for any consideration of any sort of acts or developments that have happened since then. So I think that's a really important distinction, and it's said up and down in Concepcion that really delineates what the First Step Act is versus other provisions of 3582. But it's more limited than a de novo resentencing. There doesn't need to be a new sentencing hearing with the defendant present, right? That is true, Your Honor. It is more limited, but whether there is a new sentencing proceeding I think should not be dispositive in this case or any sort of case that interprets Magwood and other circuits. Explain why not. Why isn't that a highly salient thing that we said in Easter, we said in Shields that First Step Act modification doesn't lead to necessity for a resentencing, full resentencing hearing? Why isn't that significant in understanding whether or not we're dealing with something second successive? Because, again, I'll direct the Court's attention to Magwood. And I said it earlier, but I'll just repeat it, which they are interpreting Burton versus Stewart. The judgment, whether there's a new judgment, the inquiry is whether the judgment is pursuant to which the petitioner is being detained. That's the only inquiry that the Court engages in in Magwood. That's how they interpret second or successive. It's just about how is the petitioner actually being detained here rather than if there's a new proceeding or a new sentencing or a new in-person hearing. Plenty of circuits have said, and let me just finish this point, but plenty of circuits have said that it doesn't require an in-person proceeding to be a new judgment. The Fifth Circuit in Lampton and Greenwood, and Greenwood was a case in which the prosecution and the defense actually agreed upon relief without any sort of hearing, without any sort of proceeding. That resulted in a new judgment. I'll just acknowledge that it was unpublished, but it draws from other Fifth Circuit cases that interpret Magwood, and they interpret Magwood in a fairly limited way. Lampton from the Fifth Circuit also defines a new judgment as meeting, if it sets forth crucial items found in federal rules of criminal seizure 32K1, including the adjudication sentence, which is exactly what you find here in Mr. Edwards' case. Okay, so we're in the circumstance where somebody comes and says, hey, knock my sentence back on the special benefits associated with the First Step Act. They get that benefit, and the legal consequence of that is then to open up everything again under 2255 because you've got a new judgment in place, and it wouldn't be second successive. So it's sort of like it's a double benefit. You get your reduced sentence, and you get to take another crack at 2255 because it's all wrapped up together. That's sort of the legal position you're pressing, right? That's the legal position that the Supreme Court pressed in Magwood. I mean I agree that it is somewhat absurd or somewhat out there, but it's a strict reading of the statute, and I think that's what the Supreme Court demands. I'll just – one last point here, Your Honor. I know I'm out of time, but there is a – in most First Step Act proceedings that, by the way, already happened. So we're not creating some sort of floodgate here. Most of them – most judges or district judges just adjust the – or do what is required under conception for the drug count. They don't actually reduce other counts. So I would say that actually holding that Mr. Edwards' case creates a new judgment as to each count because the district court looked at each count is in keeping with this court's decision in Romanski. Let me ask you something about that, Romanski and the change in the count. So assume with me that there wasn't a change actually in the sentence, that there was 60 months before on the 922G count and 60 months after. So you cite to Romanski and you say that this case fits Romanski. Romanski cites to Miller, and Miller says that the sentencing package doctrine must be combined to cases in which the sentences on the underlying counts are interdependent. How is the 922G count interdependent on the 841 count? Well, Your Honor, it seems to me that the district court in this case did recognize that in order to achieve the benefit that it wished in terms of Mr. Edwards getting out earlier, that it looked at each count. If it could have, frankly, and I do believe there is a link... I look back at the transcript and we say it doesn't look like that's the case with the 922G count. Is this still a sentencing... Does sentencing package doctrine apply to the 922G count? This court in Romanski would suggest that it does in that the district court did look at each count as a whole and applied a version of the sentencing package doctrine in the proceeding below. So I will say that it does create a new judgment in keeping with Romanski, which, again, Your Honor pointed out, suggested that the sentencing package doctrine... that in cases in which the sentencing package doctrine applied that a new judgment could form across each count. Now, I'm saying in most first step back cases... what I'm saying is that this is not the best case to draw some sort of bright line rule around. But if this court is inclined to do that, you could say that if a district court in a first step back proceeding just touches the drug count, which is what happens most of the time, then the new judgment would result from that count but not the other counts that are untouched. Here, the district court touched all of them in a sentencing package doctrine way. Okay. Thank you, Mr. Saylor. We'll have you back on rebuttal. And we'll hear from counsel for the government. With respect to Mr. Hill. Good morning, and may it please the court, John Alex Romano. On behalf of the United States, as Your Honor noted, I will be presenting arguments for the government in the appeals brought by Mr. Hill. And I would like to begin with the threshold requirement of a certificate of ability, but I would just like to say two sentences about the ultimate merits. In light of DeCastro, the Supreme Court's decision in Greer, and Mr. Hill's own criminal history, he does not have a viable rehab claim. For his last conviction in Virginia, he served more than five years in prison in connection with that case. So it's implausible for him to come in and deny knowledge that he was previously convicted of a crime punishable by more than one year in prison. Could we fairly even get to that? I take Mr. Saylor's argument to be, you know, that wasn't what was going on below, and we shouldn't get to it. Is that a fair argument from the defense? I think the court can get to it, because it's fully briefed by both parties on appeal. But I do just want to correct the record. The government does believe that a certificate of appealability is required here. And this sort of goes to what the district court did, and I apologize for cutting you off, Your Honor. My apologies, actually, to you. When I said it's agreed, no COA is denied. I think what was agreed was we were in the zone here where effectively we were able to get to the merits. Am I right about that? We're in a zone where I think we can get to the merits of the procedural default question, yes, Your Honor. Yes. And you weren't contesting or pushing back on that. The government agrees that under Lesko, that Mr. Hill is effectively raising a rehab challenge in what should be considered a first 2255 motion, because his previous 2255 motion, he successfully challenged his sentence. It was an amended judgment that was issued, and the government agrees that under Lesko, in light of that amended judgment, his rehab challenge now should be considered a first 2255 motion and not subject to the rules on second or successive motions as the district court incorrectly treated it as. So we certainly agree with that. But, you know, I think the first question this court asked the parties to address that argument was whether a certificate of appealability is required, and the government submits that one is required, because the district court did more than simply deny Mr. Hill's motion for the appointment of counsel. The court appeared to rule, determined conclusively, that Mr. Hill was not entitled to relief on his rehab claim, and I think that becomes apparent when the court looks at the last paragraph. It's a short order, but the last paragraph of the district court's order, district court says that the defendant does not qualify for relief, the court is not going to appoint counsel, and then in the last sentence of the order, the court says issuing a certificate of appealability is not warranted. The court would not have ruled or denied a certificate of appealability if it were only denying the motion for appointment of counsel, because that's a collateral ruling, you don't need a COA for that. So what is the practical effect of that? Help us sort that out. We're here on the denial of a motion for appointment of counsel. You agree you don't need a COA for that. You contend you do need a COA to get past that, if you're going to deal with the merits. Correct. But both sides have fully briefed the merits, you're arguing that. Where does that leave us? I think the court could analyze procedural default in the context of whether or not to issue a COA. This court has declined to issue COAs on rehab challenges on procedural default ground. For example, if the court looks at the Robinson case, which both parties discussed in their briefs, this court declined to issue a COA on a rehab claim, and that was even though the district court had denied the rehab claim on the concurrent sentence doctrine. The district court actually did not address procedural default when it denied the claim. So I think this court could consider procedural default in the context of whether or not a COA is issued, and ultimately ask whether reasonable jurists would disagree that whether or not Mr. Hill could show cause and prejudice, or alternatively, actual innocence. There was no briefing of this in the district court. We don't have a full analysis as a result of that. The district court here seems to have taken a somewhat unusual step of converting a motion for appointment of counsel into a merits petition and then ruling on it. Why shouldn't we say under those circumstances, just remand, send it back? What's the harm in doing that? I agree that the court could issue that ruling. But here, I think the arguments for why this court could decide it are two-fold. One is that both parties addressed procedural default extensively in their briefs. Even Mr. Hill preemptively raised procedural default in his opening brief. I understand in his reply brief, he's changed course a bit and said this court shouldn't decide procedural default. But it has been fully briefed by the party. I think from a fairness, adequate flushing of the issues, I think that has already been done and is before the court. And here, the second point would be that it's not a close call. What you're saying is they need a COA. They don't need a COA for the appointment of counsel stuff. Everybody's agreed on that. But to get to these underlying merits points, they need a COA. No COA was issued by the district court. No COA was issued by this court. But we ought to like do a nunk-pro-tunk COA and just deal with it. Is that what you're asserting? Correct, Your Honor. And I think because it's, and I realize in the normal course, the court might just send this back to the district court. But because it's been fully briefed by the parties, even Mr. Hill in his opening brief on page 63, he's asking the court to decide, ultimately, is really how you challenge. And he's briefed procedural default. And where, not only have the parties briefed it, but where it is quite clear, in the government's view at least, that his inability to overcome procedural default is not a close question in light of DiCastro on the cause question. In light of Greer and Adams. I'm sorry, didn't Greer come out after the opening brief? It did, Your Honor. So there wouldn't have been an opportunity in the opening brief to address Greer? No, but we did address Greer in our answering brief. And we said that one thing that Greer says is that before a court can even consider a non-preserved rehaif claim, the defendant has to make a sufficient argument or representation on appeal as to what evidence he would have presented to a properly instructed jury. And Mr. Hill certainly had that opportunity in his reply brief to make that type of representation. But we're not just hanging our hat on that. I mean, the question would be, in light of Mr. Hill's, and this goes to prejudice and actual innocence, in light of Mr. Hill's extensive criminal history, you know, 14 adult convictions in 14 previous cases, at least four of those convictions, we know were for crimes punishable by more than one year in prison because he was sentenced to more than one year in prison. Then you have the more than five years he served in connection with his last sentence. That's going to prejudice? Let's stick on cause for a minute, all right? And answer Mr. Saylor's assertion that the cause argument, we shouldn't take DiCastro in that quorum nobis setting and overlay it on what 2255H is talking about. What's your response? I think that would be very difficult to distinguish DiCastro on that ground. It is true that DiCastro arises in the quorum nobis context, but the court, and I know this court is familiar with the DiCastro opinion, DiCastro repeatedly draws on the cause standard from the traditional habeas proceeding context. Is there something about the quorum nobis standard that is different and more difficult to meet than 2255H? I don't think with respect to whether the failure to raise it sooner is excusable. I don't think so. The quorum nobis standard looks for whether there was a sound reason for the delay in raising the claim. I don't think that analysis, and certainly the court in DiCastro didn't seem to suggest it was any different from the cause analysis that's done in the traditional habeas context. The court in DiCastro also cited the 11th Circuit decision, I think it's in Innocent, which was a cause found at the failure to raise a rehaeth claim sooner. It was not established cause under the cause standard. So by all accounts, the court in DiCastro treated the cause analysis as transferable to the sound delay analysis in the quorum nobis context. So I don't see a basis for distinguishing DiCastro. Can you please answer Mr. Saylor's argument here at the podium that, hey, there's still cause because there was ineffectiveness of appellate counsel? Ineffectiveness wasn't raised in the brief, and I'm not aware of a failure to raise a rehaeth claim before a district court amounts to unreasonable performance by counsel. It certainly wasn't briefed by the parties here. And I'm standing here right now, I'm not optimistic that he would be able to show that a failure to raise a knowledge of status, argument, or claim before rehaeth was decided would amount to unreasonable performance under Strickland. Isn't that part of the problem here? We don't have full briefing that was done at the level of the district court. And the court for ruled sua sponte, the government didn't even have the opportunity, the need to raise procedural default, right? And again, I understand the court, that could be one avenue that the court takes, which would be to send it back to the district court. But even the ineffective assistance of counsel issue, I mean, that would go to cause, but you'd still have this very high hurdle on prejudice slash actual innocence, which many decisions that we've cited, including, I think it's the, maybe the Adams case out of this court, if I'm recalling correctly, it undertakes the analysis of prejudice on a rehaeth claim, even in the plain error context. And it's found with less criminal history, less strong than Mr. Hill has, that you can establish prejudice. It may be highly unlikely that he could, but don't we also need to be concerned with process and both from the perspective of Mr. Hill and the public generally, where we have here a motion converted to a petition, ruled on sua sponte, without substantive briefing, coming up to appeal. And you're asking us to, in the somewhat unusual fashion, for retroactively grant ourselves a COA and analyze what happened below. We don't think you get past the COA step, Your Honor. I take Your Honor's point. I think the court could obviously remand it to the district court, but I don't think the government's argument is on theory. And again, I'm looking at Mr. Hill's opening brief where he's asking this court to decide procedural default, ultimately to grant him a new trial based on rehaeth. And I understand some of the rulings, while this appeal was stayed, are less favorable to Mr. Hill now on procedural default, but that was still his initial filing in this court was to ask this court to decide those questions. If the court believes it's appropriate in the first instance to have the district court do it, obviously we would understand that. But we think there is a sufficient basis that the court would choose it to do otherwise. Okay, good. All right, thank you very much, Mr. Romano. Mr. Zausman. Good afternoon, Your Honor. May it please the court? Robert Zausman on behalf of the government. We believe that Mr. Edwards' claim is as thin and really unsuccessful as Mr. Hill's, but we also don't believe that this court should reach that because he, unlike Mr. Hill, did not have a district judge who passed on his 2255 request. Instead, in this matter, Judge Padova simply dismissed it as second or successive, and we're here to defend that ruling, that this motion was essentially a second or successive petition because he had previously unsuccessfully litigated a 2255 motion, and his success under Section 404 of the First Step Act did not restart the counter for 2255 motions. Okay, please take on the assertion from Mr. Saylo that Concepcion changed things. Go ahead. Yes, Your Honor, it does not. With respect to my friend, Mr. Saylo, he is relying on one sentence in Concepcion that uses the word judgment, but the issue was not before the Supreme Court as to what the meaning of judgment in Section 2255 is, which is the issue that we're dealing with here. Concepcion involved a procedure for a Section 404 motion. It held, as we now know very clearly, it's a two-step process. Somebody has to be eligible. They have to have been sentenced for a crack cocaine offense, the statutory penalties for which were changed, and then if you surmount that threshold, you get to the 3553A factors, and that's what Concepcion is about, and it says that you consider everything. Does Concepcion undercut the reasoning, Telsey?  I don't believe so because we get back to the fundamental question, Your Honor, of what is a judgment under 2055, and I think, Your Honor, your question to Mr. Saylo about the legal invalidity of a judgment, I think that question is laser-focused on what the issue is here. What the cases are consistently saying is that any sentence modification, they all fall under Section 3582, that any sentence modification is not something that changes the validity of a judgment, and therefore, it is not a new judgment, and that contrasts it from Magwood v. Patterson and these other cases where you have a judgment that was invalidated, and then there's a new judgment. So Concepcion just doesn't speak to this issue. What does speak to this issue, the two things, you know, we have a long brief, but there are two things I really want to highlight in our brief that I think are important. One is Section 3582 itself. That is what allows a modification of a sentence, and I think Congress there very clearly speaks to the issue before this Court. What Section 3582 says is that notwithstanding that a sentence can be modified, and then it lists the ways it can be modified that I'll get back to in a second. It says, notwithstanding that a sentence can be modified, a judgment of conviction that includes a sentence constitutes a final judgment for all other purposes. That's really answering our question here, and 3582 lists the ways in which a sentence can be modified. It says, number one, under Subsection C. Well, Subsection C includes several things. It includes compassionate release, which, of course, we've seen a flood of in recent years. It includes application of a retroactive sentencing guideline. That's 3582C2. And it includes this situation, which is 3582C1B, where you have a statute that allows a sentence modification. Here, the first step back. 3582 also refers to Rule 35, which is usually a reduced sentence based on cooperation, and it refers to an appeal. And the courts are consistent. This Court has not had the opportunity to address this. But with regard to all those other circumstances, the appellate courts are unanimous that these are sentence modifications that do not create a new, quote, judgment for purposes of Section 2255. Is... Is that the upshot from Easter or from Shields? Do they speak to this at all? I don't think so. I mean, Easter is largely consistent with Concepcion. There's a little tweaking along the way from this Court's precedent. This Court had held that a court in a Section 404 proceeding is required to recalculate the guidelines. Concepcion struck out that part of it. But in every other respect, Concepcion affirmed the approach of this Court, which is that if you meet the threshold, then a court has to consider the 3583A factors. But that's all a matter of procedure with regard to a Section 404 motion. It's not a question of whether you're creating a new, quote, judgment. Why isn't this sort of sui generis? Because it does look like the Court was approaching this with a sentencing package doctrine in mind. Well, the sentencing package doctrine, again, I don't know that that creates a new judgment. It often does apply, to be frank and honest, in Section 404 proceedings. It didn't have to apply here. The Court did not have to do what it did in reducing the 922G sentence because it was originally concurrent 120 months, could have stayed concurrent 120 months, and it wouldn't have affected the length of the new sentence. To answer Judge Montgomery Reeve's question, it's page 594 of the appendix. This is where the Court does, without any explanation, simply say 60 months for count 3 instead of 120 months. There are other cases, and here's where I'll be frank, where the sentencing package doctrine should require a court under Section 404 to lower non-crack terms. Say you have a situation where the sentence was driven by the guidelines, the guidelines for crack suggested 120 months, and the Court imposed concurrent sentences of 120 months on all counts, even though that never would have happened if not for the crack cocaine. The government has recognized in cases like that that a court does have the authority under Section 404 to reduce the other sentences as well. But again, none of that speaks to, is this a new judgment? It's not because even where you're lowering sentences under the sentencing package doctrine, it's a purely discretionary proceeding. The Court doesn't have to lower the sentence at all. The Court cannot increase the sentence. The Court doesn't have to have a hearing. The Court, there's so much about this. It's not a new judgment and a new sentencing proceeding. Now, Your Honor is correct. I think you're suggesting that the District Court in this particular case did do quite an extensive process, and that, of course, it's to its credit and no surprise. There were many issues that were presented to the Court, so it had a hearing. It heard from everyone. It heard from supporters of Mr. Edwards. It went through the 3553A factors in detail. It issued what it called an amended judgment, but none of that is required. This Court, and in fact, it's unusual. But when you say none of that's required, it happened. So since it happened, doesn't that have legal, does that have legal import or not at all? I don't believe it has import. The legal question remains, was this a, quote, new judgment under Section 2055? And it was not. And again, the appellate courts are unanimous with regard to retroactive resentencing proceedings. There's the case in the Ninth Circuit. Judge Padova think he was entering a new judgment? He entered something called an amended judgment. He did, but the fact that he did that, I don't think can have legal significance in one case. I can tell you, Your Honors, that there were about 100 cases in our district in which defendants received lower sentences under Section 404. Most of those never came to this court because most of them actually were entered by agreement between our office and the defenders. In the vast majority of those cases, consistent with this court's authority, there were not hearings, it was done on the papers, and orders were entered, not judgments. So the fact that one judge is incredibly detailed and thorough, as Judge Padova often is, can't change the legal import of what's happening in all those other cases or what all the other appellate courts are addressing when it comes to 3582C2. And the one case I also want to highlight is the Buen Rostro decision, if I'm pronouncing that correctly, in the Ninth Circuit that's cited in our brief. Yet another circumstance involving a presidential commutation where President Obama had commuted, lowered the person's sentence. And the Ninth Circuit says, well, that's not a new judgment, it's a modification of a sentence. It relies on all the other cases involving 3582 I'm talking about. And what the court says is, to create a new judgment, a change to a sentence must be accompanied by a legal invalidation of the prior judgment. That is a perfect one-sentence summary of our position. And I think it's what Judge Montgomery Reeves alluded to earlier, that even with everything Judge Padova did, there's no legal invalidation. Judge Padova... Give us the site, Mr. Zosmer, for what you just quoted. Sure. 895 F3rd, 1160. And that quote is at page 1165. Well, why isn't it just a different animal when we have a reduction in sentence for other counts? I mean, at that point, it's not really under the authority of the First Step Act, right? The First Step Act is what gave the court authority just to reopen the judgment, presumably for purposes of reducing the relevant sentence. But if a court then opts to fully re-sentence someone, you know, across all the other counts, how do we distinguish what happens there where all of the sentences are changed from, I mean, short of there being a sentencing hearing or the required presence of a defendant? But how do we distinguish that legally from the entry of a new judgment? I mean, in one case, the original judgment is simply being reduced where we've got the drug offense under the First Step Act. But if the sentences for all of the counts are being altered, then don't we have a moment where the original sentence is no longer valid and we have a new sentence across the board? What the courts are saying, and I think what is correct, is that any reduction in the sentence is simply that. It's a modification. It's a reduction of the previous judgment, which in all other respects remains legally valid. And as I mentioned, for Section 404 re-sentencing, there often are times when more counts than just the crack counts see a reduction in sentence. Arguably here, it was ultra-virus because you didn't need to do it, but there are cases in which it's appropriate. And by the way, with regard... Judge, I want to press you a little bit because I do want you to answer what Judge Krause is asking. How do we draw a line? How do you make a distinction? You're telling us it doesn't matter that the judge held a full hearing. It doesn't matter that he heard from all the parties, that he articulated everything carefully, that he went beyond the cocaine count, that he re-sentenced overall, and that he entered something called an amended judgment. None of that matters, according to you. Then how do we distinguish that from other cases where all those things happen and we say, well, that's a change, that's a new judgment? Is it the fact that this showed up as a First Step Act application in the first instance that's the distinguishing factor and that's good enough? Is that the legal position you're taking? Or is there some other thing that would allow us to say, this is just a modification? Yes, I would... A new judgment. I would say that any motion under Section 4 of the First Step Act categorically, I don't like using that word too much, but I can in this context, categorically is not a new judgment, nor are any of the other types of sentence modifications described in 3582 by the express statement of Congress that it doesn't affect the original judgment. And you're saying that is the case even if a district court judge chooses to go beyond what the First Step Act was doing with respect to lowering cocaine offenses and moves it. Imagine somebody who's, you know, got 10 other counts. They got a Rico count, they got gun counts, they got, you know, murder for hire counts. They got a bunch of other stuff in there. Gets into all of it. Resentences on everything. Your assertion is the judge could do that because it happened here and could enter a new sentence on everything and call it a new judgment. And it's the door that they went through at the start that makes the difference. That's right. Now, to be very clear, we don't believe the court should have reduced the other sentences here, but there are cases, as I've said, in which the court can and should reduce. And this is the rest of my answer to Judge Krause's question, which is this is exactly true of all the other types of 3582 modifications. A compassionate release can result in the reduction of terms on all counts. A 3582 C2 motion based on a retroactive guideline amendment. In that process, what the court does is it calculates the new guideline range, which applies to all counts, because, of course, you wind up with one final guideline range. And then the court will adjust sentences on as many counts as are needed if it wants to reduce the sentence within the guideline range. Though it's discretionary in the same way, it doesn't have to. The same way... But the court... You said earlier the court couldn't. It doesn't matter what the court calls it. What if this was a very intentional thing by a district court judge? Could a district court judge say, you know what, we're here based on the First Step Act. We're opening everything up. I'm dealing with everything. And I'm gonna enter a new judgment. Could the judge have the power to do that? No, that would be inappropriate. The government would object. Maybe the government would appeal. Concepcion makes very clear there's not a recalculation of the guidelines on any other counts that Section 404 is limited to application of the new statutory penalties that were changed by the Fair Sentencing Act of 2010. The judge says I'm doing this... I'm not recalculating those guidelines. Concepcion tells me I can't do that. I'm just doing this on the basis of the sentence packaging doctrine. That part might be okay depending on how the sentence was structured. But it's still only a reduction of sentences on those other counts. It's not the entry of a new legal judgment. The clearest bright line, I think, is set by that statement I read from the Ninth Circuit that it requires the invalidation, the legal invalidation of the prior judgment. Then you have a new judgment. But otherwise, what you have here is a purely discretionary reduction in sentence. The judge can say no. The judge doesn't have to reduce it at all. The judge doesn't have to have a hearing, doesn't have to have the defendant's presence. Simply has to explain that it considered the 3553A factors and has decided not to do anything. That's not a new judgment. The original judgment has not been invalidated in any other way. Any questions? Thank you very much. Mr. Osborne, Mr. Taylor, we'll have you back on the vote. Thank you, Your Honor. I'll just bring up three points from the government's argument here. Let's just start with the government's assertion that the circuits are uniformly against the First Step Act as being a new judgment. That's not true, technically. The D.C. Court of Appeals in United States v. Palmer, and this was not in my brief, but I did find this later, 35F4-841 does suggest that a First Step Act grant would result in a new judgment. It's deciding whether to evaluate a subsequent 2055 position petition. 35F4 what? 35F4-841, and that's decided in 2022. The D.C. Court suggests that a First Step Act grant would result in a new judgment. I just want to address the government's points regarding Concepcion. The government said that I was just quoting from one portion of Concepcion. I'll quote from another one. The Supreme Court in Concepcion differentiated between 3582C sentence modifications pursuant to the guidelines and the First Step Act statute itself. At 142 Supreme Court 2402 Note 5, the majority addressing the dissent said that 3582 statute was merely a gateway provision that then led a court to the statute itself, to the First Step Act itself. They are vastly different proceedings, and my friend said that- Well, stop for a second, Mr. Staley. Yes. I want you to respond to how Mr. Zosmer framed it. He said 3582C. It lays out these series of things of which the First Step Act is one. It comes under the by statute piece of it. There's compassion release. There's this, there's that. So if it's under 3582C, do you agree or disagree with that? It is under 3582C, yes. 3582C1B then says, to the extent otherwise expressly permitted by statute. That's a pretty crucial clause there because then as interpreted by the Supreme Court in Concepcion, that gives or that empowers any district court receiving a First Step Act to A, evaluate whether the person is subject to different statutory minimums and maximums. So if you want a change in the actual statute, there you go. And then B, receive information that is far beyond any sort of 3582C adjustment to sentencing. I'm sorry, adjustment to a sentence as a result of sentencing commission guidelines. What is otherwise expressly permitted by statute, that language, the Supreme Court has said, is quite a bit. And I was just gonna quibble a little bit with what my friend characterized as the limited nature of post-Concepcion proceedings under the First Step Act. Because the judge here, while he did do the in-person appearance, this court has said, for instance, in Shields, that a court is required to consider relevant intervening legal and factual developments, all kinds of good behavior, any sort of changes under any other 3553A factors and any non-retroactive changes to the sentencing guidelines. So there's a lot of information the judge is actually required to receive. Are they required to act upon that? No. But those are all bases on which the court could reduce a sentence pursuant to the motion and a sentencing package doctrine around it. But why should we think about this in terms of something that actually invalidates the existing judgment? I mean, isn't that the key? That's what we were looking at and thinking about in LESCO. And that's what we understood the Supreme Court to be directing us to. Where is there any legal invalidity at any point in the process of the motion being filed, of the consideration of all of that evidence, and then of a reduction, even a reduction that affects all counts? Well, Your Honor, respectfully, I don't think the legal invalidity is the necessary inquiry here. I don't think that's the basis of whether it's a new judgment or not. And that's not what Magwood says either. That's not what Burton v. Stewart says. That's not what those cases that are sort of foundation cases that interpret what is a second or successive motion. Again, it's a term of art. That's what the Magwood Court says. And it is only about what is the judgment pursuant to which the petitioner is being detained. That's it. In this case, there's a new judgment. In this case, there are new judgments as to each count. Well, you know, that's where the rabbit goes in the hat when you start calling it a judgment, right? That's the whole point. We're fighting over whether it's a judgment or not. So calling it a judgment doesn't advance the ball force. Magwood, I thought, explicitly left open the question of whether a second habeas petition that challenges a new sentence and an undisturbed conviction runs afoul of a second or successive rule. It didn't go there, right? Correct, Your Honor. It did not go there. So then I'm not sure how going back to Magwood's helping you in addressing the argument that's being put forward on this point. Because if you change the sentence, you change the judgment. And that's from Deal v. United States. And that's what this court held in Lesko. That can't be the answer. Because then it doesn't make any sense for Magwood to be saying, look, we're just not going to get into it whether a new sentence with an undisturbed conviction makes a difference. Because what you're saying is a new sentence always means a new judgment. Well, I think that's what the Second Circuit held in Johnson v. United States. That certainly is what this court held in Lesko. I'll agree with Your Honor that this court in Lesko addressed the limited issue or the circumstances in which there was a successful habeas grant, meaning the sentence was invalid. Absolutely. I get the tension here, but I'm saying that's not a fundamental aspect of what Magwood requires in interpreting whether a judgment is second or successive. It doesn't have to be invalid. It doesn't have to be illegal. Whether it's a commutation or not, I think is basically beside the point. How would we draw the line? How do you suggest we draw the line? It sounds like you're saying any time there's a change in the sentence. There is, by that fact, a new judgment. So, yeah, every single First Step Act reduction is a new judgment, is therefore opening the door under 2255H. That's the way the law works. That's your legal argument, right? Yes, I think the First Step Act does, again, as interpreted by the Supreme Court, does allow the courts in kind of unusual proceedings to receive and require them to receive all this information that looks like a sentencing, that is a sentencing, that results in a new judgment, as opposed to... I'm just trying to capture this. Sure, sure. Your position is any sentencing reduction is a new judgment. Therefore, every sentencing reduction under the First Step Act opens things up under 2255H, period. Yes, I think, yes. But, again, I think it's important to delineate and not get coaxed into what the government is arguing in terms of 3582C2 proceedings, which are far different, which the Supreme Court is very clear in Concepcion are different animals. And just to hopefully address Judge Montgomery-Reeves' question or return to that, regarding what kinds of cases have other courts or maybe other courts have evaluated as creating new judgments versus not, there's this real... In the sort of post-Magwood cases, there are ministerial or administrative adjustments, which are more like 3582C, which I agree every court has held is not a new judgment, and I'm with you on that. I'm not trying to throw First Step Act proceedings in that bucket. I think that's the error that the Telsey court made, but I'm hoping that's not the error that this court's going to make. All right. Thank you, Mr. Saylor. And thank you, counsel, for the government of your arguments. It's been helpful. We've got the matter under advisement. We'll recess court.